UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| ALFRETTA RENEE JOHNSON and MACK EDWARD SCOTT, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) No.: 2:07-CV-161 |
| WAYNE ANDERSON, BRENDA HENSLEY, FREDA TOOMBS, and SULLIVAN COUNTY SHERIFF'S OFFICE, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, [Doc. 8]. The *pro se* plaintiffs have responded to the defendants' motion, [Doc. 12]. Attached to the response is the affidavit of each plaintiff. Because the plaintiffs are acting *pro se*, and because they assert in their response to the defendants' motion that they are willing to amend their complaint, the Court will treat these affidavits as an attempt by the *pro se* plaintiffs to amend their complaint. For the reasons which follow, the motion of the defendants will be granted in part and denied in part.

**I.    Applicable Legal Standard.**

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiffs, accept all the complaint's factual allegations as true, and

determine whether the plaintiffs undoubtedly can prove no set of facts in support of the claims that would entitle them to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert. denied*, 498 U.S. 867 (1990). The Court may not grant such a motion based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id*. (citations omitted).

**II.     Factual Background.**

The following facts, taken as true, are set forth in the plaintiffs' original complaint and the affidavits of the plaintiffs.

The plaintiff, Alfretta Renee Johnson ("Johnson"), is a white, 37 year old female resident of Sullivan County, Tennessee. Johnson co-habits with plaintiff, Mack Edward Scott ("Scott"), who is a 52 year old black male resident of Sullivan County, Tennessee. Johnson was an inmate at the Sullivan County Jail from February 10, 2006 through July 12, 2006 and at the Sequatchie County, Tennessee Jail from July 13, 2006 through October 18, 2006.[1] Johnson has now completed a 12 month term of probation which began on October 19, 2006.

An inmate work program is operated at the Sullivan County Jail. The program includes a

---

[1] Although unclear from plaintiffs' complaint, it appears that Johnson was transferred to the Sequatchie County, Tennessee Jail from the Sullivan County Jail to serve the remainder of the sentence for which she was being initially held at the Sullivan County Jail, apparently through some sort of agreement between these facilities or between the State of Tennessee and Sequatchie County, Tennessee. The plaintiffs' complaint does not indicate the reason for Johnson's stay at the Sullivan County Jail nor does it indicate the length of her sentence.

2

work program for inmates who attain trusty status and female inmates may apply for transfer to the Johnson City City Jail-Women's Work Camp ("women's work camp"). Inmate work assignments include "cell housekeeping, hall, kitchen, car wash, dog pound, garage, maintenance crew, road crew and cleanup crew." Only inmates who meet certain established criteria may apply for participation in the inmate work program. Johnson met all of the criteria to be considered for the inmate work program and had previously had trusty status and transfer to the women's work camp on prior stays at the Sullivan County Jail.

During her most recent stay at the Sullivan County Jail, Johnson requested trusty status and requested transfer to the women's work camp but never received a written response. Several inmates who were housed with Johnson had also been denied trusty status. Johnson inquired of several corrections officers who were employed at the Sullivan County Jail about her request to be a trusty and those officers expressed "concern" about her not making trusty. A corrections officer later told Johnson that the defendant Hensley had indicated that Johnson would never again be a trusty in the jail "due to the fact I had been in and out numerous times." According to Johnson, this was said only after Hensley found out she was dating a black man. Also, at the time of Johnson's transfer to Sequatchie County, Tennessee Jail a corrections officer approached her and said "Your Blackman has a long way to go to see you now!".

While Johnson's request for the inmate work program was pending, Scott, her boyfriend, left voice mail messages with officials at the Sullivan County Jail expressing Johnson's excitement about the opportunity to be transferred to the women's work camp. Scott also wrote a letter to Sheriff Anderson to inquire as to why Johnson had not been made a trusty or transferred to the women's work camp. Defendant Hensley responded to the letter to the Sheriff in a "condescending and racist"

3

manner and threatened retaliation by transferring Johnson to a Nashville prison. Scott wrote Anderson a second letter on June 26, 2006 and objected to what he called the racist and threatening nature of the first response. Scott also asked for a meeting with the Sheriff. He apparently received no response and his request for a meeting went unheeded. Prior to Johnson's transfer to the Sequatchie County Jail on July 12, she was subjected to increased inspections and searches and there were increased unit wide drug tests.

Tennessee Department of Corrections inmates are compensated for good behavior by being awarded eight days per month off their sentence. A trusty at the Sullivan County Jail is compensated for good behavior by being awarded thirty days per month off their sentence and inmates working at the women's work camp also receive thirty days per month off their sentence.

According to Johnson, a corrections officer approached her in March, 2004 and requested that she meet him after her release at a location in Blountville, Tennessee and also made comments to the effect of "I have a nice hotel I would like to take you to". She filed a complaint about the incident, the incident was investigated and no disciplinary/administrative action was taken against the corrections officer. Johnson now believes that she "might" be the victim of discrimination by the staff of the Sullivan County Jail as retaliation for her complaint. Johnson also claims that racial discrimination against black inmates was "blatant and openly practiced" at the Sullivan County Jail and that there was a routine practice of transferring inmates whose family staff of the jail felt were a problem. Johnson also complains of a situation where a highly qualified black applicant for a deputy position with the sheriff's department had been denied employment because he was married to a white woman and that employees had openly bragged about not hiring him because of his interracial marriage.

4

Scott, a self described community "activist" in Northeast Tennessee and Southwest Virginia, claims to have had a long standing rivalry with the sheriff of Sullivan County, dating back to the days when the sheriff was a Kingsport, Tennessee police officer. Scott apparently made numerous complaints to the Kingsport governing board concerning matters involving the police department and details his role in "rallying a large contingent of the black community" in support of a young, black defendant involved in a criminal case in 1995. He also alleges an incident in March, 2006, while waiting to visit Johnson, in which he scrambled to obtain a preferred seat ahead of another visitor, a white female, which led the white female to angrily curse and scream at Scott. As a result of the incident, he received a call from an on duty officer at the Sheriff's department who questioned him about the incident and suggested that he could be "brought up on charges" for that kind of conduct. According to Scott, his response was that he would "not tolerate being victimized by white males that had been enlisted by a white female who could not victimize me by herself. That type of racism is intolerable and unacceptable." Scott assumes that it was reported to the "chain of command" in the Sheriff's office that he had called the Sheriff's office a "racist institution."

Scott alleges that, because Johnson was "wrongfully transferred" to the Sequatchie County Jail, he incurred additional expenses for phone calls, trips to Sequatchie County and the additional cost of providing various items of clothing and supplies to Johnson while at the Sequatchie County Jail. He also alleges lost income because Johnson did not make trusty. Scott alleges that there is a "culture of racism" that exists in the Sullivan County Sheriff's Office.

The defendants named in the plaintiffs' complaint are the Sullivan County Sheriff's Office, Wayne Anderson, the elected sheriff of Sullivan County, Brenda Hensley, the Corrections Major of the Sullivan County Sheriff's Office and Freda Toombs, the Transportation Corporal of the Sullivan

County Sheriff's Office. The defendants Anderson, Hensley and Toombs are all sued in both their individual and official capacities. Plaintiffs claim substantial damages due them as:

> victims of intentional selective, racial and/or sexual discrimination, harassment, retaliation, denial of equal protection of the laws and denial of due process of the law; under Title VII of the 1964 Civil Rights Act; as amended, 42 U.S.C. sec. 1981, sec. 1983, and sec. 1985; and the Fourteenth Amendment as applicable to each plaintiff. Plaintiffs also claim damages for all the defendants' capricious and deliberate violation of their Fourteenth Amendment rights.

Comp., ¶ 1.

### III. Analysis and Discussion.

#### A. Sullivan County Sheriff's Office.

The motion to dismiss correctly argues that the Sullivan County Sheriff's Office is not a suable entity. *Rhodes* v. *McDannel*, 945 F.2d 117, 120 (6th Cir. 1991). *See also De La Garza v. Kandiyohi County Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (neither a county jail nor a sheriff's department is a suable entity); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff'[s] departments and police departments are not usually considered legal entities subject to suit"); *Bradford v. Gardner*, 578 F.Supp. 382, 383 (E.D. Tenn. 1984) ("the sheriff's department is not a suable entity"). Therefore, plaintiffs' suit against the Sullivan County Sheriff's Office will be DISMISSED.

#### B. Claims of Discrimination Under Title VII and 42 U.S.C. § 1981.

As set forth above, plaintiffs make claims under 42 U.S.C. § 1981 and Title VII of the Civil Right Act of 1964. While the exact contours of plaintiffs' claims are difficult to discern from their pleading, it appears that the plaintiffs claim racial and/or sexual discrimination in employment as the result of Johnson's claims that she was denied trusty status and participation in the women's work

6

camp.

Title VII states, in pertinent part: "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees equal contract rights regardless of race. Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors. The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all the benefits, privileges, terms, and conditions of a contractual relationship." 42 U.S.C. § 1981.

To establish a claim for racial discrimination under § 1981, a plaintiff must plead and prove that he belongs to an identifiable class of persons who are subject to discrimination based on their race, the defendant intended to discriminate against him on the basis of race and the defendant's discriminatory conduct abridged a right enumerated in the statute. 42 U.S.C. § 1981. Claims for racial discrimination in employment under § 1981 are analyzed under the Title VII framework. *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989)).

Plaintiffs allege that both Title VII and § 1981 apply to the inmate work program operated at the Sullivan County Jail. Defendants, on the other hand, allege that Sullivan County does not become an employer for the purposes of Title VII and § 1981 by simply allowing inmates the privilege of being classified as a trusty in order to do odd jobs around the jail facility and that plaintiffs' claims fail because there is no employer/employee relationship between plaintiffs and

7

defendants. The defendants rely upon the statutory and dictionary terms of "employee" and, citing *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 220 (4th Cir. 1993), claim that the participants in the inmate work programs at the Sullivan County Jail do not receive any "significant remuneration".

As an initial matter, while plaintiffs refer in a conclusory fashion to claims of sexual discrimination under Title VII in their complaint, they have pleaded no facts which would establish such a cause of action. Therefore, to the extent the are making such a claim, the complaint fails to set forth any facts which would establish a legally cognizable cause of action. To the extent plaintiffs' complaint seeks to claim sex discrimination under Title VII, such claim will be DISMISSED.

Defendants' primary attack on the plaintiffs' complaint as it relates to the Title VII and § 1981 claims is the absence of an employer/employee relationship between the plaintiffs and any defendants. Without citation to any case authority, defendants argue that inmates are not employees for the purposes of Title VII and § 1981 and, therefore, plaintiffs' complaint fails to state a claim upon which relief can be granted. It is not, however, clearly established in the Sixth Circuit that an inmate cannot state a viable Title VII claim and it does not appear to the Court that the Sixth Circuit has definitively answered that question. In *Overholt v. Unibase Data Entry Inc.*, 221 F.3d 1335, 2000 WL 799760 (6th Cir. Ohio), the Sixth Circuit stated that "[i]t is unclear whether prisoners are protected under Title VII." The Sixth Circuit further noted a split among the circuits on the issue, referencing *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (prisoners can be "employees" for purposes of Title VII in certain circumstances) and *Williams v. Nease*, 926 F.2d 994, 997 (10 Cir. 1991) (inmate did not have employment relationship with the Federal Bureau of Prisons and was not

8

protected by Title VII). While it may be unlikely that plaintiffs could ultimately prevail on their Title VII and § 1981 claims under either the Ninth Circuit or the Tenth Circuit standard, it appears that the question is better suited for disposition on a motion for summary judgment, rather than a Rule 12(b)(6) motion. For that reason, and because defendants have not addressed the issue more fully in their brief, the motion to dismiss the Title VII and § 1981 claims of plaintiff Johnson against Sullivan County will be DENIED, inasmuch as her claims against the individual defendants in their official capacities is in reality a claim against Sullivan County.[2]

To the extent that plaintiff Johnson seeks to assert a cause of action under Title VII or § 1981 against the individual defendants, however, her claims must be DISMISSED. An employer is defined under Title VII as "a person engaged in an industry effecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). The Sixth Circuit has joined the majority of circuits in concluding that Congress did not intend individuals to face liability under the definition of "employer", despite Congress' use of the term "agent." *Wathen v. General Electric Co.,* 115 F.3d 400, 406 (6th Cir. 1997). Thus, defendants Anderson, Hensley and Toombs may not be held personally liable under Title VII or § 1981.

To the extent plaintiff Scott is asserting claims against any of the defendants under Title VII or § 1981, his claims must be DISMISSED because there is no employer/employee relationship even

---

[2] The defendants also argue, again without development or citation to authority, that plaintiff Johnson is not a member of a protected class; however, the Sixth Circuit has found association with a protected party to be relevant under § 2000e-(2)(a). In *Tetro v. Elliott Popham Pontiac*, the Court reasoned that "a white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child." 173 F.3d 988, 994 (6th Cir. 1999). And, in *Johnson v. University of Cincinnati*, the Court held that the plaintiff, a university administrator, stated a claim of Title VII discrimination not because of his status as an African-American but because of his advocacy on behalf of minorities and women. 215 F.3d 561, 575 (6h Cir. 2000). Thus, Johnson could be a protected party based upon her association with Scott, an African-American.

alleged between Scott and any of the defendants in the case, nor is their any claim of any contractual relationship of any kind between Scott and any of the defendants in the case. Rather, Scott simply avers that he is "the purported victim, because he was acting as plaintiff Johnson's direct representative." No facts are alleged in plaintiffs' complaint to establish any cause of action on behalf of plaintiff Scott under either Title VII or § 1981.

Plaintiffs also appear to asserts claims of retaliation in violation of 42 U.S.C. § 1981 and Title VII of the 1964 Civil Rights Act. In order to establish a *prima facie* case of retaliation under Title VII, an employee must show that she engaged in activity protected by Title VII, this exercise of protected rights was known to the employer, the employer thereafter took adverse employment action against the employee and there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham Cty. Fiscal Ct.*, 2001 F.3d 784, 792 (6th Cir. 2000).

Even if this Court assumes that there was an employer/employee relationship between plaintiff Johnson and Sullivan County, she has not pled any facts which even suggest that she engaged in any activity protected by Title VII prior to the denial of her request for trusty status or transfer to the women's work camp. As a result, plaintiff Johnson's claim for relief for retaliation fails. For the same reasons set forth above, plaintiff Scott has pled no facts which would establish a claim of retaliation under Title VII or § 1981.

   **3. Plaintiffs' Claims Under 42 U.S.C. § 1985.**

Plaintiffs allege in their complaint that the defendants Anderson, Hensley and Toombs "[c]onspired and violated SCSO Rules and Regulations to deprive the plaintiff of his [sic] Fourteenth Amendment rights . . ." in violation of 42 U.S.C. § 1985.

Title 42 United States Code Section 1985 provides, in pertinent part:

10

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the Equal Protection of the laws, or the equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3)

To establish a claim under § 1985, a plaintiff must show: "1) a conspiracy; 2) for [the] purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Riddle v. Egensperger*, 266 F.3d 542, 549 (6th Cir. 2001) (citation omitted). The plaintiff must also "establish that the conspiracy was motivated by class-based animus." *Johnson v. Hills & Dales General Hospital*, 40 F.3d 837, 839 (6th Cir. 1994).

Plaintiffs' conspiracy claim fails for two reasons. First there are no facts set forth in the complaint to support the *conclusory* claim that the defendants conspired to deprive plaintiffs of their civil rights. Secondly, plaintiffs' conspiracy claim is barred by the intra-corporate conspiracy doctrine. "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hull v. Cuyahoga Valley Joint Vocational School District*, 926 F.2d 505, 509 (6th Cir. 1991) (quoting *Nelson Radio & Supply Company, Inc. v. Motorola Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). The doctrine also applies to governmental entities, *see Jackson v. Tennessee Department of Safety*, 2006 WL 208578 (E.D. Tenn.)), and in cases alleging civil rights conspiracies, *Johnson*, 40 F.3d at 840.

11

There is an exception to the intra-corporate conspiracy doctrine known as the "scope of employment" exception. That exception "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Id.*. The court in *Johnson* held "that when employees act outside the course of their employment, they and the corporation may form a conspiracy under 42 U.S.C. § 1985(3)." *Id* at 841. The exception to the intra-corporate conspiracy doctrine is not applicable in this case, however. As employees of the Sullivan County Sheriff's Department, all of the individual defendants are employees of Sullivan County, Tennessee. Not only do the plaintiffs not allege that Anderson, Hensley and Toombs were acting outside the course of their employment, they affirmatively allege that each was acting in his or her official capacity and under color of law at all times relevant to the complaint. Plaintiffs' complaint, therefore, does not state a claim under § 1985.[3]

**C.     Plaintiffs' Claims Under 42 U.S.C. Section 1983.**

Both plaintiffs pursue a claim pursuant to 42 U.S.C. § 1983. To sustain a § 1983 claim, plaintiffs must establish that they were deprived of a right secured by the constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law, *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149 (1978); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). Plaintiffs may enforce a wide range of federal constitutional rights under § 1983 against defendants who acted under color of state law. To the extent plaintiff Johnson alleges discrimination in prison employment, her claim raises a recognized equal protection concern. *See Smith v. Ottinger*,

---

[3] As with the prior claim, plaintiff Scott does not allege any grounds to support a legal cause of action by him under § 1985 but rather alleges injuries derived solely from his "acting as plaintiff Johnson's direct representative." His claim under § 1985 is also subject to dismissal for this reason as well.

12

230 F.3d 1360, 2000 WL 1359632 (6th Cir. Tenn.)) (citing *Keevan v. Smith*, 100 F.3d 644 (8th Cir. 1996); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Bentley v. Beck*, 625 F.2d 70, 70-71 (5th Cir. 1980)). To the extent Johnson seeks recovery on an employment discrimination claim under § 1983, her claim mirrors a Title VII claim. *See Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 483-84 (6th Cir. 1989). Therefore, for the reasons set forth above, Johnson's claims of racial discrimination based on equal protection under § 1983 will not be dismissed under Rule 12(b)(6).

Plaintiff also appears to raise a claim pursuant to § 1983 under the Fourteenth Amendment. In order to sustain a claim pursuant to § 1983 and the Fourteenth Amendment, the plaintiff must show that 1) the conduct at issue was performed under color of state law; 2) the conduct caused a deprivation of Fourteenth Amendment rights; and 3) the deprivation occurred without due process of law. *Nishiyama v. Dixon County, Tennessee*, 814 F.2d 277 (6th Cir. 1987) (*en banc*). To state a procedural due process claim under § 1983, a plaintiff must demonstrate that she possessed a protected liberty or property interest and that she was deprived of that interest without due process. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). In *Sandin v. Conner*, 515 U.S. 472 (1955), the Supreme Court held that the only liberty interest a prisoner may protect through § 1983 is freedom from restraint which imposes "atypical, significant" hardship on the inmate in relation to the ordinary incidents of prison life. 515 U.S. at 486.

Plaintiff Johnson cannot state a claim under the due process clause because prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g., Dellis v. Corrections Corporation of America*, 257 F.3d 508, 511 (6th Cir. 2001); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o

prisoner has a constitutional right to a particular job or to any job."). In the Fourteenth Amendment due process context, prison administrators may assign inmates jobs and wages at their discretion. *Altzer v. Paderick*, 569 F.2d 812 (4th Cir. 1978). Plaintiff Johnson thus has no property or liberty interest in a particular job in prison nor the right to participate in any particular prison program. Her complaint, therefore, fails to set forth a claim upon which relief can be granted pursuant to § 1983 and the Fourteenth Amendment and this claim will be DISMISSED.

Furthermore there is no right under the Constitution to earn or receive sentence credits, *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992). Likewise, Tennessee law does not create a right to earn sentence credits, *see T.C.A.* § 41-21-236(a)(2). Accordingly, there is no right to due process in connection with classification decisions that have such an uncertain effect on a particular inmate's release. *See Miller v. Campbell*, 108 F.Supp.2d 960, 966 (W.D. Tenn. 2000).

As to plaintiff Scott's claim under § 1983, he acknowledges that a § 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. He argues, however, that he has been directly injured by the defendants and that he is "the purported victim, because he was acting as plaintiff Johnson's direct representative." He therefore claims the right to sue on behalf of Johnson's estate for her alleged deprivation of rights under § 1983 and he further alleges that he has suffered damages "with the increased cost of time, energy and money to maintain his support of plaintiff Johnson" and thus has been deprived of his civil rights under § 1983. Plaintiff Scott's argument is frivolous and completely without merit.

No person may sue for the deprivation of the civil rights of others. *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1978). "In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. Accordingly, only the purported victim, or his estate's

14

Case 2:07-cv-00161 Document 13 Filed 08/28/08 Page 14 of 15 PageID #: 14

representative(s), may prosecute a § 1983 claim; conversely, no cause of action may lie under § 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). The *Claybrook* decision of the Sixth Circuit is entirely dispositive of Scott's claims under § 1983.

### III. Conclusion.

For the reasons set forth above, defendants' motion to dismiss for failure to state a claim upon which relief can be granted, [Doc. 8], is **GRANTED IN PART AND DENIED IN PART**. In sum, as set forth above, all of the claims asserted by the plaintiff Mack Edward Scott are DISMISSED and all claims of the plaintiff Alfretta Renee Johnson are **DISMISSED** except for those claims asserted by her which allege racial discrimination in employment and equal protection under § 1983.

SO ORDERED.

ENTER

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
